IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALMA MORENO, et al.,          )
                              )
          Plaintiffs,         )
                              )
     v.                       )
                              )
TITLEMAX OF VIRGINIA, INC.,   )          1:23-CV-589
TITLEMAX OF SOUTH CAROLINA,   )
INC., TMX FINANCE, LLC, TMX   )
FINANCE OF VIRGINIA, LLC, TMX )
FINANCE OF TENNESSEE, LLC,    )
TITLEMAX OF TENNESSEE, LLC,   )
and TITLEMAX OF GEORGIA, LLC, )
                              )
          Defendants.         )
_____)
                              )
ABARA JOHNSON, et al.,        )
                              )
          Plaintiffs,         )
                              )
     v.                       )
                              )
TITLEMAX OF VIRGINIA, INC.,   )          1:23-CV-807
TITLEMAX OF SOUTH CAROLINA,   )
INC., TMX FINANCE, LLC, TMX   )
FINANCE OF VIRGINIA, LLC, TMX )
FINANCE OF TENNESSEE, LLC,    )
TITLEMAX OF TENNESSEE, LLC,   )
and TITLEMAX OF GEORGIA, LLC, )
                              )
          Defendants.         )
_____)
                              )
ALANA MCCLENDON, et al.,      )
                              )
          Plaintiffs,         )
                              )
     v.                       )
                              )
TITLEMAX OF VIRGINIA, INC.,   )          1:23-CV-865
TITLEMAX OF SOUTH CAROLINA,   )
INC., TMX FINANCE, LLC, TMX   )
FINANCE OF VIRGINIA, LLC, TMX )

FINANCE OF TENNESSEE, LLC,       )
TITLEMAX OF TENNESSEE, LLC,      )
and TITLEMAX OF GEORGIA, LLC,    )
                                 )
              Defendants.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Defendants move in each of these three cases for reconsideration of the court's denial of their motions to dismiss for lack of personal jurisdiction and, in the alternative, to certify the court's denial orders for interlocutory appeal. (Doc. 59 in case number 1:23-cv-589; Doc. 35 in case number 1:23-cv-807; Doc. 35 in case number 1:23-cv-865.)[1] Plaintiffs have responded in opposition (Doc. 69), and Defendants have replied (Doc. 74). Defendants in case number 1:23-cv-589 have also moved to stay proceedings pending resolution of the motion for reconsideration. (Doc. 62; Doc. 70 (Response in Opposition); Doc. 75 (Reply).) For the reasons set forth below, the motions will be denied.

## I.   MOTION FOR RECONSIDERATION

These related cases each involve claims by North Carolina borrowers who entered into consumer car title loans with one or

---

[1] Defendants' motions for reconsideration are identical across the three cases, except for inconsequential differences. For convenience, the court refers to the docket entries in case number 1:23-cv-589, unless otherwise indicated. The court's reasoning applies to each case, and the court discusses them in this aggregated matter only for convenience; the cases are not consolidated.

2

more Defendants.[2]  (Doc. 10.)  Plaintiffs allege that Defendants' loan rates far exceed that permitted by North Carolina law in violation of the North Carolina Consumer Finance Act, N.C. Gen. Stat. §§ 24-1.1 et seq. and 53-165 et seq., and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.  (Id. ¶¶ 20-39; Doc. 55-6 at 2 (listing annual interest rate of 142.4028% in one Plaintiff's loan contract.))  Plaintiffs request statutory and punitive damages and seek to enforce Defendants' arbitration provisions in their loan contracts by requesting that these cases be stayed and the matters ordered to arbitration.  (Doc. 10 at 8.)

Defendants initially moved to dismiss the claims of a subset of Plaintiffs for lack of personal jurisdiction.  (Doc. 23.) However, Defendants did not move to dismiss the claims of those Plaintiffs whose vehicles were repossessed by Defendants in North Carolina.  (Doc. 24 at 2 n.2.)  The court permitted limited jurisdictional discovery, which is now complete.  On May 31, 2024, the court denied Defendants' motions to dismiss for lack of personal jurisdiction.  (Doc. 57.)  Defendants seek reconsideration, arguing that the court committed "clear or manifest error" in its application of Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021).  (Doc. 60 at

---

[2] Plaintiffs allege that Defendant TMX Finance, LLC is liable through a piercing of the corporate veil theory.  (Doc. 10 at 7.)

3

1.)

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A court may revise an interlocutory order under Rule 54(b) in three circumstances: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)) (internal quotations and alterations omitted). However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e). Am. Canoe Ass'n, 326 F.3d at 514–15. The Rule 54(b) standard departs from the Rule 59(e) standard "by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (quoting Carlson, 856 F.3d at 325).

"Although Rule 54(b) motions for reconsideration are held to a less stringent standard than motions under Rule 59(e), such motions 'should not be used to rehash arguments the court has

4

already considered' or 'to raise new arguments or evidence that could have been raised previously.'" <u>Hatch v. Demayo</u>, No. 1:16cv925, 2018 WL 6003548, at *1 (M.D.N.C. Nov. 15, 2018) (quoting <u>South Carolina v. United States</u>, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). In exercising its discretion, a court reconsidering an interlocutory order "may be tempered at times by concerns of finality and judicial economy," but "[t]he ultimate responsibility of the federal courts . . . is to reach the correct judgment under law." <u>Am. Canoe Ass'n</u>, 326 F.3d at 515.

Defendants argue that the court erred in three ways: (1) it "incorrectly consider[ed] alleged forum contacts that are irrelevant to and do not relate as a matter of law to the claims at issue"; (2) it "mistakenly consider[ed] alleged contacts — specifically repossessions — that do not apply to or involve Plaintiffs subject to the Motion to Dismiss"; and (3) it "indiscriminately lump[ed] together the conduct of all Defendants and all relevant Plaintiffs without regard for which individual Defendants actually contract with, and made contact with, which Plaintiffs." (Doc. 60 at 3, 9, 11.)

As to the first two contentions, Defendants take issue with the court's analysis under the second prong of the specific personal jurisdiction analysis — namely, that Plaintiffs' claims must "arise out of or relate to" Defendants' contacts with the forum. <u>Ford Motor Co.</u>, 592 U.S. at 359. Notably, Defendants

addressed the second prong only briefly in a footnote in their initial motions to dismiss, where they contended that the court need not consider that prong because Defendants lacked minimum contacts with the forum. (Doc. 24 at 16 n.8.)

Defendants now raise several new arguments that were not, but undoubtedly could have been, made in their motions to dismiss. For example, they contend that the court may not consider their contacts with the forum that are not specifically proscribed by the statute under which the claims are brought, ostensibly because such contacts do not "relate to" Plaintiffs' claims. (Doc. 60 at 4-5.) Defendants cite no authority to support this rule, and it is directly contrary to Supreme Court law. Ford Motor Co., 592 U.S. at 365 (considering an array of non-proscribed related conduct in the state — such as operation of dealerships, prior sales of the same model vehicle, general advertising, and sale of replacement parts — as contacts related to the products liability claim).[3]

---

[3] Defendants contend that their conduct is not proscribed by North Carolina General Statute § 53-190. (Doc. 60 at 4-5.) This argument is apt to a Rule 12(b)(6) motion for failure to state a claim. The question here is whether Defendants' contacts with the state relate to Plaintiffs' claims, not whether the claims are properly stated. Cf. Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) (en banc) (Friendly, J.) ("[T]he functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first. A dismissal for lack of jurisdiction . . . does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.").

6

Defendants also argue for the first time that their contacts with each Plaintiff occurred only after each Plaintiff signed a contract outside of the forum, and as a result, these post-contract contacts "are insufficient as a matter of law to establish the requisite relatedness to Plaintiffs' causes of action." (Doc. 60 at 6-7 (citing Small Bus. Fin. Sols., LLC v. Corp. Client Servs., LLC, No. 21-cv-811, 2023 WL 1995414, at *7 (D. Md. Feb. 13, 2023)).) Although Defendants attempted in their motions to dismiss to reframe the minimum contacts inquiry to focus only on contacts with the named Plaintiffs, the Supreme Court has time and again focused that inquiry instead on contacts with the forum state more broadly and then analyzed the contacts' relationship to the plaintiff's claims in the second "arise out of or relate to" prong. Walden v. Fiore, 571 U.S. 277, 284 (2014) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647-48 (1950) (finding personal jurisdiction over a Nebraska-based corporation where defendant had 800 contracts with Virginia citizens, among other contacts). Notably, the Court in Ford found specific personal jurisdiction without expressly considering Ford's contacts directly with the plaintiffs. Ford Motor Co., 592 U.S. at 365-66.

Defendants rely on Small Business for the proposition that the court should disregard any contacts occurring after "the moment the purportedly illegal loan contracts were formed." (Doc. 60 at

7

6.)[4]  They plainly misread the holding of <u>Small Business</u>, where the court disregarded any alleged contacts with the forum that occurred after the <u>breach</u> of a contract, not after contract formation.  <u>Small Business</u>, 2023 WL 1995414, at *7 (observing failure to allege contacts that "predate th[e] injury").  In this way, <u>Small Business</u> is consistent with cases that vindicate the right of defendants to have "fair notice" they may be haled into court by considering contacts with the forum up to when the cause of action arose.  <u>See, e.g.</u>, <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 62 (1st Cir. 2005) ("[I]n most cases, contacts coming into existence after the cause of action arose will not be relevant.").  <u>But see</u> <u>Logan Prods., Inc. v. Optibase, Inc.</u>, 103 F.3d 49, 53 (7th Cir. 1996) (considering contacts as related after the injury occurred because they are "relevant when determining whether [the defendant] intended to serve the [forum] market").  In applying <u>Small Business</u>, Defendants never state when they believe Plaintiffs' causes of action arose — apparently because they

---

[4] In <u>Small Business</u>, a Maryland company sued a Florida defendant who allegedly tortiously interfered with contracts the plaintiff had entered into with debtors in states other than Maryland.  <u>Small Business</u>, 2023 WL 1995414, at *1, *7.  The only contact the defendant had with the forum before the claim arose was the effect of the breach of the plaintiff's contracts with the out-of-state debtors; all of the defendant's telephone calls to induce the debtors' breach occurred outside Maryland.  <u>Id.</u> at *6.  In refusing to find personal jurisdiction because the plaintiff failed to allege sufficient relevant in-state activity that predated the injury, the court rejected the plaintiff's argument that <u>Ford</u>'s "relate to" analysis extends to conduct occurring after the cause of action arose.  <u>Id.</u> at *7.

misread the case to disregard contacts after mere contract formation.[5]

Even though Defendants did not previously contest the "arise out of or relate to" prong, the court has already explained that Defendants' ample contacts with North Carolina are related to Plaintiffs' claims. (Doc. 57 at 20-22.) For instance, Plaintiffs submitted evidence that Defendants have recorded over 50,000 liens with the North Carolina Department of Motor Vehicles as of 2020 — i.e., before Plaintiffs' claims arose. (See, e.g., Doc. 55-53); Wall v. Automoney, Inc., 877 S.E.2d 37, 47 (N.C. Ct. App. 2022) (relying on Ford and finding it reasonable to "subject Defendant to suit in North Carolina because Defendant deliberately and systematically reached out beyond South Carolina to enter into loan agreements with thousands of North Carolina citizens" (internal quotation marks omitted)), rev. denied, 884 S.E.2d 739 (N.C. 2023). Defendants have wisely abandoned their position that filing thousands of liens in North Carolina is merely "filing a form" (Doc. 24 at 11), as they now acknowledge that they do this in order to "protect [their] transient collateral" (Doc. 74 at 7). Defendants cannot credibly argue that filing liens to protect their loan collateral is unrelated to Plaintiffs' excessive interest

_____

[5] Defendants do not address, for example, whether the cause of action arises each day that they "retain any principal or charges whatsoever with respect to the loan," under North Carolina General Statute § 53-166(d), which is the basis of one of Plaintiffs' claims.

9

claims for those very loans. Indeed, there is evidence that the loan contract includes a provision requiring the borrower to pay $20 to allow a Defendant to perfect a lien on the vehicle title after the contract is executed. (Doc. 55-6 at 2; see also Doc. 10 ¶ 11 (alleging that Defendants "have thousands of active liens on North Carolina owned and titled motor vehicles").)

Moreover, as the court observed in its initial opinion, Defendants have had many uncontested contacts with North Carolina that are plainly related to the claims at issue, namely systematically making loans to North Carolina residents, running television and radio advertisements for loans that are broadcast in North Carolina, and sending marketing mailers for loans into North Carolina. (Doc. 57 at 18 (citing Doc. 55-49; Doc. 30-17 in 1:23-cv-807; Doc. 30-42 in 1:23-cv-865).) There is little reason to doubt Defendants' sincerity when they state they have "d[one], and continue[] to do, everything possible [sic] keep [their] activities outside of North Carolina." (Doc. 74 at 6 (emphasis in original).) As Defendants put it, they "know[] that North Carolina prohibits the type of title loans that [they] offer[]." (Id. (emphasis removed).) Nevertheless, the Constitution requires that the court consider whether Defendants purposefully availed themselves of the forum, not whether they purposefully avoided it. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (stating that the Due Process Clause "gives a degree of

Case 1:23-cv-00807-TDS-JLW   Document 52   Filed 09/13/24   Page 10 of 18

predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit"). Defendants were obviously issuing loans to North Carolinians and securing them with liens filed with the North Carolina Department of Motor Vehicles. (Doc. 16 ¶¶ 11, 15, 18.)

Defendants again assert that the court should not consider their repossessions of vehicles of persons not subject to the motions to dismiss. (Doc. 60 at 10-11.) Given the array of other related contacts with the forum, the court likely did not even need to consider the repossessions in order to find personal jurisdiction. In any event, Defendants supply no persuasive ground for the court to ignore these repossessions as unrelated to Plaintiffs' claims when Defendants admit that numerous Plaintiffs in these actions have had their vehicles repossessed pursuant to the same loan contracts at issue. (Doc. 24 at 2 n.4.) Defendants are correct to point out that "related to" does not mean "anything goes." Ford Motor Co., 592 U.S. at 362. But repeatedly repossessing vehicles in North Carolina pursuant to identical contracts entered into with North Carolina borrowers is far more related to Plaintiffs' claims than were the defendant's contacts to the claims in Ford. Id. at 365-66; (Doc. 57 at 21-22.) Defendants also argue that because the repossessions did not induce the loan contracts, they cannot be related to Plaintiffs' claims.

11

(Doc. 60 at 6.)  This position improperly seeks to adopt the "causation-only approach" that the Supreme Court rejected in <u>Ford</u> and fails to address that widely carrying out an enforcement mechanism for their contracts has a "non-causal affiliation" to Plaintiffs' claims.  <u>Ford Motor Co.</u>, 592 U.S. at 352 (internal quotations marks omitted); <u>cf.</u> <u>id.</u> at 367 (stating that jurisdiction should not "ride on the exact reasons for an individual plaintiff's purchase").

Finally, Defendants assert that the court failed to disentangle personal jurisdiction as to each Defendant.  (Doc. 60 at 11.)  To be sure, Defendants have never affirmatively argued, and do not here argue, a lack of personal jurisdiction as to any particular claim against any particular Defendant.  Rather, Defendants treated themselves uniformly in their motions to dismiss and continue to do so here.  (<u>See</u> Doc. 24 at 1 (denominating all TitleMax entities as "Defendants" or "TitleMax" and using those monikers throughout motion).)[6]  Importantly, Defendants sought

---

[6] Defendants did state in a footnote in the motions to dismiss that TMX Finance LLC is a "parent holding company of the TitleMax operating entities and is not engaged in the business of lending in any state, including North Carolina."  (Doc. 24 at 1 n.2.)  They have never argued that this Defendant should be treated differently from the others.  In any event, as the claim against TMX Finance LLC is based on allegations of piercing of the corporate veil (which are not disputed for purposes of these present motions), a demonstration of personal jurisdiction over the remaining Defendants suffices as to that Defendant as well.  <u>S. New England Tel. Co. v. Glob. NAPs Inc.</u>, 624 F.3d 123, 138 (2d Cir. 2010) ("It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process.").

12

complete dismissal of the complaints based on their general contentions raised in the aggregate; they have provided no basis to individually challenge personal jurisdiction as to any particular claim against any particular Defendant. See Lab. Corp. of Am. Holdings v. Kearns, 84 F. Supp. 3d 447, 460 (M.D.N.C. 2015) (declining to develop arguments not raised or supported by the parties).

It is true that a court must have personal jurisdiction over a claim for every defendant against whom it is brought. Calder v. Jones, 465 U.S. 783, 790 (1984). While each Plaintiff has the ultimate burden of demonstrating personal jurisdiction for his or her individual claims, Defendants must nevertheless first affirmatively and fairly raise the nature of their jurisdictional challenge, or else the issue is waived. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). Defendants' argument here appears to stem from a point they raised in the "Statement of the Case" in their motions to dismiss — i.e., that the actions are "pled as if each Plaintiff has a claim against all 7 different Defendant entities named." (Doc. 24 at 2.) Defendants are correct that Plaintiffs' complaint does not articulate which Plaintiff's claims are lodged against which Defendant (Doc. 10), but Defendants never argued this has any legal significance as to personal jurisdiction in the motions to dismiss. Such shotgun complaints are surely discouraged as a violation of Federal Rule of Civil Procedure

13

8(a)(2), but the correct avenue to challenge them is a motion to dismiss pursuant to Rule 12(b)(6) or a motion for more definite statement pursuant to Rule 12(e). <u>James River Ins. Co. v. O'Gallagher LLC</u>, 340 F.R.D. 471, 473 (S.D. Fla. 2022) (noting that a shotgun pleading should be challenged with a motion for more definite statement, pursuant to Rule 12(e), or motion to dismiss, pursuant to Rule 12(b)(6)). Presumably Defendants did not determine that the complaints were so vague or ambiguous that they could not prepare a response, as they filed answers in each of these cases. (Doc. 16.)

Even so, Defendants' <u>own</u> affidavits attached to the motions to dismiss identify each Defendant TitleMax entity with which each Plaintiff subject to the motions contracted. (Doc. 24-2.) Plaintiffs have filed, along with other evidence, affidavits that attribute contacts such as liens, repossessions, and advertising in North Carolina to "TitleMax" generally, and Defendants have <u>never</u> contested the truth of these affidavits as to any named Defendant. (Doc. 55-53 (collecting findings of affidavits, which likewise refer generally to "TitleMax").) Defendants seek complete dismissal from the lawsuit based on the claims of the Plaintiffs subject to the motion, but the parties' evidence demonstrates that the court has personal jurisdiction over at least one Defendant as to a Plaintiff's claim in each case such that no Defendant should be dismissed from the lawsuit altogether.

14

Had Defendants argued for it, the court could have considered whether partial dismissal of some claims as against some Defendants was appropriate. On this record, however, Defendants have neither argued nor made a showing that this would be justified. Further, because Defendants have not claimed a lack of personal jurisdiction as to all Plaintiffs (having not moved as to some Plaintiffs' claims), no Defendant would be dismissed entirely from these actions in any event. Accordingly, Defendants have failed to demonstrate on this record that denying partial dismissal of any Defendant — i.e., a remedy they have not even requested — would constitute "manifest injustice." South Carolina v. United States, 232 F. Supp. 3d at 799 ("Manifest injustice occurs where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." (internal quotation marks omitted)); Wootten v. Virginia, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) ("[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." (internal quotation marks omitted)).

In light of Defendants' extensive contracts for loans to North Carolinians, which are secured by liens filed with the North Carolina Department of Motor Vehicles, enforced by repossessions in North Carolina, and induced by advertising in North Carolina,

15

it does not offend "traditional notions of fair play and substantial justice" for Defendants to be haled into court in North Carolina with respect these Plaintiffs' claims. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Defendants' motions for reconsideration will therefore be denied.

## II. MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

Defendants alternatively move the court to certify its orders denying the motions to dismiss for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3). A defendant seeking an interlocutory appeal pursuant to section 1292(b) must "show (1) that a controlling question of law exists (2) about which there is a substantial basis for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Riley v. Dow Corning Corp., 876 F. Supp. 728, 731 (M.D.N.C. 1992). The decision to certify an interlocutory appeal is firmly in the district court's discretion. Id. Unless all of the statutory criteria are satisfied, however, "the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b)." Ahrenholz v. Bd. of Trs. of the Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000).

Here, there is no basis for interlocutory appeal. Principally, these actions will continue on because Defendants have not moved to dismiss all Plaintiffs. Accordingly, an

16

immediate appeal would not "materially advance the ultimate termination of the litigation." Riley, 876 F. Supp. at 731 (discussing a "strong federal policy against piecemeal appeals"). Moreover, there is no substantial basis for a difference of opinion. Defendants contend that the Fourth Circuit has not published an opinion on point after Ford (Doc. 60 at 12), but this ignores that Ford, along with numerous other binding Supreme Court precedents, squarely forecloses their motions to dismiss. Consequently, the motions to certify the court's orders for interlocutory appeal will be denied.

## III. MOTION TO STAY

Defendants in the Moreno action, case number 1:23-cv-589, moved to stay proceedings pending resolution of the motion for reconsideration. (Doc. 63.) The motion will be denied as moot.

## IV. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Defendants' motions for reconsideration and alternative motions to certify the court's orders for interlocutory appeal (Doc. 59 in case number 1:23-cv-589; Doc. 35 in case number 1:23-cv-807; Doc. 35 in case number 1:23-cv-865) are DENIED.

IT IS FURTHER ORDERED that the Moreno Defendants' motion to stay proceedings (Doc. 62 in case number 1:23-cv-589) is DENIED AS MOOT.

17

```
                                    /s/   Thomas D. Schroeder
                              United States District Judge
September 13, 2024
```